# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 315-03929 |
| ELAINA VANDERS JOHNSON, ) | |
| ) | JUDGE MARIAN F. HARRISON |
| Debtor. ) | |
| ) | CHAPTER 11 |
| ) | |

___

## MEMORANDUM OPINION
___

This matter came to be heard upon Heritage Bank, USA, Inc.'s (hereinafter "Heritage Bank") motion to dismiss or convert, the debtor's Amended Second Disclosure Statement, and the debtor's request for the continued use of cash collateral. For the following reasons, which represent the Court's findings of fact and conclusions of law, pursuant to Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052, and made applicable by Fed. R. Bankr. P. 9014(c), the Court finds that Heritage Bank's motion to dismiss should be granted. Accordingly, all other matters are moot, including the debtor's newly amended Disclosure Statement filed on April 22, 2016, which is scheduled to be heard on May 6, 2016.

## I. FINDINGS OF FACT

The debtor filed a voluntary Chapter 11 petition on June 9, 2015. Heritage Bank timely filed a proof of claim, asserting secured claims in the amount of $4,092,483.04 as of the petition date. Since the petition date, Heritage Bank's secured claims have been reduced as the result of the foreclosure of two items of collateral: the 2360 Memorial Drive property previously used by the Debtor as her marital residence, and, more recently, a 12-unit apartment building located at 5 Glendale Road, Loretto, Tennessee (hereinafter "Loretto Property").

On October 8, 2015, the debtor filed her Original Chapter 11 Plan and related Disclosure Statement. On October 22, 2015, the debtor filed an Amended Disclosure Statement. On November 9, 2015, Heritage Bank objected to the adequacy of the Second Disclosure Statement. That same date, the debtor filed her Second Amended Disclosure Statement. On December 16, 2015, the Debtor withdrew her original plan.

On December 3, 2015, the debtor filed a Motion for Authority to Sell Real Estate (hereinafter the "Holly Pointe Sale Motion"). Specifically, the motion sought to sell property known as Holly Pointe (hereinafter the "Holly Pointe Property") to Ms. Rae Ellen Gleason (hereinafter "Ms. Gleason"). Heritage Bank objected to the Holly Pointe Sale Motion which was resolved by an agreed order. Pursuant to the agreed order: (a) Heritage Bank was to be granted stay relief with respect to the Loretto Property if it was not consensually sold on or

before January 22, 2016; and (b) Heritage Bank was to be granted stay relief with respect to the Holly Pointe Property if the debtor neither closed the Holly Pointe Property sale on or before January 22, 2016, nor filed a new plan of reorganization and disclosure statement that met the 11 U.S.C. § 362(d)(3) standards on or before January 29, 2016. Neither sale closed. In accordance with the agreed order, this Court entered an order granting stay relief as to the Loretto Property on January 26, 2016.

On January 29, 2016, the debtor filed her Second Original Chapter 11 Plan of Reorganization and related Disclosure Statement, which, per the express terms of the Loretto Stay Relief Order, was required to meet the 11 U.S.C. § 362(d)(3) standard in order to avoid immediate stay relief as to the Holly Pointe Property. On April 12, 2016, the debtor filed her Amended Second Original Chapter 11 Plan and related Disclosure Statement. This amended Disclosure Statement indicates that creditors will be paid 100%.

On February 12, 2016, Heritage Bank served assignment of rent letters upon the debtor and the Loretto tenants. In response to the notice, William Hobbs, a tenant at the Loretto Property since 2014 and a Tennessee State Trooper (hereinafter "Officer Hobbs"), contacted counsel for Heritage Bank regarding activity he had observed at the Loretto Property. Officer Hobbs testified that in late January 2016, he saw cabinets being removed from vacant units in the Loretto Property by two men in a red pickup truck that carried a "Bail Bonding" company advertisement. After they left, Officer Hobbs noticed that HVAC

window units were gone, leaving big holes in the units. Officer Hobbs did not believe the HVAC units were missing before the truck arrived. Officer Hobbs further testified that on a second occasion, a week or two after the first instance of property removal, in late January or early February 2016, he watched a man and a woman arrive in another truck and trailer and remove cabinets and large appliances from the Loretto Property.

In response to the information provided by Officer Hobbs, Heritage Bank retained Jeffery B. Long (hereinafter "Mr. Long"), a state licensed real estate appraiser, who reinspected the Loretto Property on March 3, 2016. Mr. Long had previously inspected the property on May 25, 2013, and he prepared reports from both inspections. The reports and Mr. Long's testimony reflected a dramatic deterioration of the Loretto Property within an approximate three-year period. Mr. Long testified about the differences he observed between those two dates in the exterior and interior condition of eight vacant apartment units. Mr. Long testified that the units were substantially remodeled and were all in "move-in ready" condition on May 25, 2013. When Mr. Long reinspected those same units on March 3, 2016, less than three years later, substantially all of the kitchen cabinets, appliances, sinks, faucets, toilets, interior doors, water heaters, carpets, and HVAC units had been removed, leaving each of those units in a damaged, exposed, and uninhabitable condition. Mr. Long testified that he was "shocked" at the substantial degradation since the units were renovated in May 2013, and his testimony and reports were supported by photographs he took of the Loretto Property.

The debtor testified that Luther Anderson, her now fiancé, assisted her in the management of her properties, including the Loretto Property, not charging a management fee and absorbing some costs to help the debtor stay within her budget. Regarding appliances being removed, the debtor testified that appliances were removed before Heritage Bank was granted stay relief in January 2016. Prior to that time, the debtor testified that she moved appliances and fixtures to "swap" or to take such appliances and fixtures to easier-to-rent apartment units located in Lawrenceburg, Tennessee. According to the debtor, she treated these two apartment complexes as one. The debtor's testimony as to what was removed by Mr. Anderson's bail bond truck in late January or early February, who instructed the move, what the instructions were, and exactly what happened was evasive at best. At one point in her testimony, the debtor admitted that fixtures were removed at that time, allegedly to "stabilize" the property for potential sale to Alan Boswell even though stay relief had already been granted to Heritage Bank.

The debtor also testified that some fixtures were removed due to a "flood" caused by pipes bursting between Units H and I. This was to have happened sometime in late January or early February of 2014. The debtor testified that the "flood" was only discovered when the utility company alerted her about excess water flow at some point after the pipes had burst. The debtor testified that she did not file an insurance claim because she did not want

to risk being dropped or having the rates increased.[1] Nor did the debtor report any damage to Heritage Bank even though the Deed of Trust required her to "promptly give written notice to Beneficiary of any loss or damage to the Premises and will not adjust or settle any such loss without the written consent of Beneficiary."[2]

The debtor testified that the water damage resulted in mold and mildew in some of the units. Instead of getting professional testing and remediation, she used mold "kits" obtained from her ex-husband, despite having an order of protection against him, to determine that the mold was an "innocuous" variety that could be treated with a solvent. The debtor did not believe that the condition of the Loretto Property after being renovated less than three years earlier was surprising. Instead, she blamed the changed condition of the Loretto Property on the water damage from the burst pipes and on the cost of renting to low income renters. It was clear that the debtor interpreted the provisions of the Deed of Trust loosely because it required her to "maintain the Premises in good condition and repair. Grantor will promptly repair, restore, replace or rebuild any part of the Premises now or hereafter encumbered by the Instrument, which may incur any substantial damage."

---

[1] The Deed of Trust required that Heritage Bank be named as insured mortgagee on all insurance policies. Although not argued by Heritage Bank, the failure to file an insurance claim would certainly hurt Heritage Bank's collateral.

[2] When questioned about notifying Heritage Bank about the mold and mildew problems, the debtor answered that she talked with three individuals at Heritage Bank. The debtor never indicated that she actually talked to these individuals about the mold problem. While the debtor probably talked to these individuals at some point, it is doubtful that she told them there was a significant problem with the Loretto Property.

Moreover, there was to "be no removal, demolition, or material alteration of any part of the Premises, including but not limited to, any building structure, parking lot, driveway, landscape scheme, timber or other ground improvement or equipment" without prior written consent from Heritage Bank.

The debtor testified that Mr. Anderson managed all of her properties, including the Loretto Property. Mr. Anderson testified that his "guys" went to the Loretto Property in January 2016 "to clean up the property to help improve the value and make it look more presentable to prospective buyers." As to missing fixtures and appliances taken from the Loretto Property, Mr. Anderson testified that they were taken because they "did not work" or were moved "over to Lawrenceburg so that we can rent that unit." Ms. Gleason, the real estate agent who was facilitating a sale of the Loretto Property between the debtor and Alan Boswell, also testified as to the condition of the Loretto Property. When Ms. Gleason went to look at the property in 2015, she described it as "rough." In the two units Ms. Gleason looked in, the flooring, cabinetry, and refrigerators had already been removed, and she remembered one HVAC window unit sitting on the floor.

Regarding feasibility of the debtor's plan, Heritage Bank relied on Myles MacDonald (hereinafter "Mr. MacDonald"), a CPA with over 30 years of financial accounting

experience, both operational and consulting, and extensive experience reviewing Chapter 11 plans and disclosure statements and examining feasibility.[3]

Mr. MacDonald's testimony concerning the debtor's Second and Third Plans was illuminating. To understand the debtor's plans, Mr. MacDonald had to sort, construct, and then adjust pro formas based on information obtained from the debtor's records. Mr. MacDonald's pro forma, comparing the projected/proposed revenues and expenses in the Plans and Disclosure Statements to the actual historical operating results as presented in the debtor's Monthly Operating Reports, demonstrated a negative cash flow. Specifically, assuming the debtor's post-confirmation rental operations are consistent with her June 2015 through February 2016 historical operating performance as presented in the monthly operating reports filed in this case, Mr. MacDonald testified that the debtor will experience negative cash flow of $10,735.80 per month pursuant to the disclosed revenues and expenses as presented in the January 29th Plan and that the debtor will experience negative cash flow of $15,257.91 per month pursuant to the disclosed revenues and expenses as presented in the April 12th Plan.

---

[3] The debtor challenged Mr. MacDonald's competency to act as an expert witness based on an alleged conflict of interest. At the hearing, the Court found that Mr. MacDonald did not and was not laboring under any conflict of interest in this matter because Mr. MacDonald had not been engaged to represent the debtor and testified credibly that his only knowledge regarding the debtor or the facts of this case was based on his review of documents on behalf of Heritage Bank.

8 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:15-bk-03929    Doc 292    Filed 05/05/16    Entered 05/05/16 17:22:14    Desc Main
Document      Page 8 of 18

The debtor disagreed with Mr. MacDonald's conclusions and attempted to further amend the Third Plan orally from the witness stand. She testified that income estimates had changed and/or her former attorney failed to include some income in the version of her disclosure statement and plan filed on April 12. The debtor opined at length about "several components that are missing" from her last two Disclosure Statements that render her proposed plan feasible. She blamed their omission, in part, on former counsel. These changes include additional revenue sources that were not previously included:

- $1051 in increased child support income. The only proof regarding this increase was the debtor's testimony.
- $8500 in additional income to be credited for the Live Oak property. The debtor testified that Mr. MacDonald did not accurately determine the impact of the Live Oak property because he only included expenses, not income. Unfortunately for the debtor, Heritage Bank previously obtained stay relief to collect the rents on this property.
- $650 in additional income to be received for the Union Hall property. The debtor testified that she had just recently rented this property. Mr. MacDonald added this income into his report (albeit in the amount of $625) after the debtor filed the April 12 amended disclosure statement and plan.
- $5525 in additional income to be credited for the Dover Road property. The debtor testified that Mr. MacDonald should not have included the expenses for this property because the rents are received by and the expenses are paid for

9 - U.S. Bankruptcy Court, M.D. Tenn.

by Mr. Anderson. Based on the debtor's own testimony, this income is not available to her.

- $3500 in additional income from her personal residence, the Fairway Drive property. The debtor testified that she is moving in with her fiancé and plans to rent her current residence within a few weeks. No documentation of a lease was presented, and even if the debtor really is renting the property for $3500, she will still owe $500 a month on the mortgage.
- $581 in additional income to be credited for the debtor's personal vehicle because Mr. Anderson had bought her a new car and his bail bonding company is leasing her vehicle for the amount of the car payment. Again, the debtor did not introduce any documentation to show that a lease exists.

For the most part, these additional amendments are speculative and largely unhelpful because they cannot be traced to any documented, legally binding and/or reliable source of income. Moreover, to the extent these changes are tied to the debtor's recent engagement to Mr. Anderson, the Court notes that the debtor testified that she does not know when her current divorce proceedings will be completed.

Finally, the debtor admitted she failed to pay post-petition ad valorem 2015 property taxes of $5173 on the Loretto Property during the case, but again she attempted to blame former counsel.[4]

## II. CONCLUSIONS OF LAW

The "for cause" dismissal of a Chapter 11 bankruptcy case is prescribed in 11 U.S.C. § 1112(b)(1) which provides, in pertinent part:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause.

Section 1112(b)(4) contains a nonexhaustive list of examples of "cause" justifying dismissal of a Chapter 11 case. Included within these examples are:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
>
> \* \* \* \*
>
> (I) failure timely to pay taxes owed after the date of the order for relief.

In determining whether cause exists to dismiss a case under 11 U.S.C. § 1112(b), a bankruptcy court must engage in a case-specific factual inquiry which focuses on the

---

[4]Heritage Bank filed a supplemental statement of additional facts after the hearing on this matter. The debtor objected, asserting that the proof had been closed. The Court did not consider Heritage Bank's supplemental statement in reaching its conclusions, and therefore, the debtor's objection is moot.

circumstances of the debtor. *In re Creekside Senior Apartments, L.P.,* 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013) (citations omitted). The party seeking dismissal carries the burden of proof and must satisfy that burden by a preponderance of the evidence. *In re Four Wells Ltd.,* Nos. 15-8020, 15-8021, 15-8022, 15-8023, 2016 WL 1445393, *9 (B.A.P. 6th Cir. Apr. 12, 2016) (citation omitted). A "bankruptcy court has broad discretion to dismiss a Chapter 11 case under 11 U.S.C. § 1112(b)." *AMC Mortg. Co., Inc. v. Tenn. Dep't of Revenue (In re AMC Mortg. Co., Inc.),* 213 F.3d 917, 920 (6th Cir. 2000) (citations omitted). A finding that one ground "for cause" exists, standing alone, is sufficient to justify dismissal of a Chapter 11 case. *In re Creekside Senior Apartments, L.P.,* 489 B.R. at 60 (citations omitted).

### A. SUBSTANTIAL OR CONTINUING LOSS TO OR DIMINUTION OF ESTATE AND ABSENCE OF REASONABLE LIKELIHOOD OF REHABILITATION

In order to demonstrate that cause exists to dismiss a case pursuant to 11 U.S.C. § 1112(b)(4)(A), "the moving party must demonstrate that there is both a (1) [substantial or] continuing loss to or diminution of estate assets and (2) an absence of a reasonable likelihood of rehabilitation." *In re Westgate Props., Ltd.,* 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010) (citing 11 U.S.C. § 1112(b)(4)(A)). To satisfy the first prong, a movant may demonstrate "that the debtor continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief," *id.* (citation omitted), or that the debtor's assets have declined

in value since the case was commenced. ***In re Wahlie***, 417 B.R. 8, 11 (Bankr. N.D. Ohio 2009).

To satisfy the second prong of 11 U.S.C. § 1112(b)(4)(A), a movant must demonstrate that the debtor does not have a reasonable likelihood of rehabilitation. "[R]ehabilitation[] does not necessarily denote reorganization, which could involve liquidation. Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis.'" ***In re Westgate Props.,*** 432 B.R. at 723 (citation omitted). "'Rehabilitation' is a different and . . . much more demanding standard than 'reorganization.'" ***In re Brutsche***, 476 B.R. 298, 301 (Bankr. D.N.M. 2012). If "'the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time,'" then the debtor may have a reasonable likelihood of rehabilitation. ***In re Costa Bonita Beach Resort, Inc.,*** 479 B.R. 14, 42 (Bankr. D.P.R. 2012) (citation omitted). "Although not dispositive on this element, a useful indicator regarding a debtor's chance for rehabilitation considers whether the debtor will be in a position to have a Chapter 11 plan of reorganization confirmed." ***In re Wahlie,*** 417 B.R. at 12 (citation omitted).

"The purpose of § 1112(b)(1) is to 'preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope

13 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:15-bk-03929   Doc 292   Filed 05/05/16   Entered 05/05/16 17:22:14   Desc Main
Document       Page 13 of 18

of rehabilitation.'" *In re Creekside Sr. Apts., L.P.,* 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013) (citation omitted).

### 1. <u>Diminution of Estate</u>

The proof regarding the post-petition condition of the Loretto Property, including the removal of fixtures and appliances needed to rent or operate the collateral as well as "open holes" left in some of the units, shows a loss to or diminution of estate assets. Moreover, the condition of the Loretto Property shows an inability to preserve estate assets. The debtor has had ready excuses for everything that has arisen in this case,[5] but the Court has reached the point where the debtor's excuses and other testimony are no longer credible. Therefore, it is time for this case to come to an end.

---

[5]Earlier in this case, the Court excused the debtor's failure to timely file her monthly operating reports. The Court approved the use of cash collateral, despite proof that the debtor had not followed a previously approved budget, with the caveat that the debtor had to follow approved budgets. The Court also required that the debtor include detailed information regarding Mr. Anderson's work and expenses that were being paid by the debtor, yet the debtor's monthly operating reports going forward only included receipts from Mr. Anderson for "labor" or "expenses" without indicating where or what work was actually done.

## 2. Likelihood of Rehabilitation

Neither the Second Plan, filed on January 29, 2016, nor the Third Plan, filed three days before the hearing, show a likelihood that this debtor will be able to rehabilitate. Mr. MacDonald's reports and testimony regarding feasibility of either plan were detailed and credible. The debtor tried to discredit Mr. MacDonald's calculations only by offering additional amendments from the witness stand or by blaming former counsel. As debtor-in-possession, she was responsible to review every disclosure statement and plan she has filed in this case. The debtor's information remains a moving target, making it impossible to pinpoint the feasibility of any plan she might propose. However, Mr. MacDonald credibly reviewed the feasibility of the debtor's plans, and the Court believes that his numbers are correct. Accordingly, the debtor should not be allowed to continue gambling Heritage Bank's collateral on a case that is not going to result in rehabilitation. ***See In re Creekside Sr. Apts., L.P.,*** 489 B.R. 51, 61 (citation omitted).

The Court notes that the Bankruptcy Code "does not allow a debtor an unlimited amount of time to confirm a plan or an unlimited number of attempts at plan confirmation." ***See In re Creekside Sr. Apts., L.P.,*** 489 B.R. 51, 61 (citing 11 U.S.C. § 362(d)(3)). This case was filed in June 2015, and the debtor has had ample opportunity to file and seek confirmation of a plan of reorganization. The Agreed Order Governing Stay Relief required the debtor to file a confirmable plan that meets the standards of 11 U.S.C. § 362(d)(3) on or before January 29, 2016. Section 362(d)(3)(A) requires "a plan of reorganization that has

a reasonable possibility of being confirmed within a reasonable time." This debtor has had multiple opportunities.

### B. DERELICTION OF FIDUCIARY DUTY

A debtor-in-possession "is bound by all of the fiduciary duties of a bankruptcy trustee." ***In re Insilco Tech., Inc.,*** 480 F.3d 212, 215 n.3 (3d Cir. 2007). A debtor-in-possession "is not free to deal with [estate] property as [s]he chooses, but holds it in trust for the benefit of creditors, standing in the shoes of a trustee 'in every way.'" ***In re Jehan-Das, Inc.,*** 91 B.R. 542, 546 (Bankr. W.D. Mo. 1988) (citations omitted). Failure to carry out this fiduciary duty is cause for dismissal. ***See In re Hampton Hotel Investors, L.P.***, 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001) (self-dealing by debtor's principal and court's lack of confidence in principal's ability and inclination to comply with the fiduciary duties of a debtor-in-possession is cause under § 1112(b)); ***Babakitis v. Robino (In re Robino),*** 243 B.R. 472, 487 (Bankr. N.D. Ala. 1999) ("debtor's failure to act in a fiduciary capacity for his creditors is additional section 1112(b) cause for converting or dismissing"); ***In re Cloisters of Brevard, Inc.,*** 117 B.R. 722, 723 (Bankr. M.D. Fla. 1990) (conversion appropriate where "debtor has demonstrated throughout [the] case that it cannot be trusted to act as debtor-in-possession").

In the present case, the debtor clearly breached her fiduciary duty with respect to the Loretto Property as to both the bankruptcy estate and to Heritage Bank. At a minimum, she

failed to maintain the property post-petition and failed to notify Heritage Bank of serious problems with its collateral. At worst, she actively, whether in person or by instruction, damaged and removed appliances and fixtures from the Loretto Property during the pendency of this case and most likely after Heritage Bank obtained relief from the automatic stay. The Court has given the debtor many chances throughout this case, emphasizing the importance of her role as debtor-in-possession. From the beginning, this debtor has failed to grasp that when bankruptcy protection is sought, a debtor must provide detailed information in a timely manner and actions require court approval. The proof regarding the condition of the Loretto Property makes it clear that the debtor did not take these instructions to heart, and the Court can no longer trust her to continue to possess and operate Heritage Bank's collateral within the protection provided by the Bankruptcy Code.

### C. FAILURE TO PAY TAXES

The "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief" is grounds for dismissal. 11 U.S.C. § 1112(a)(4)(I). The debtor stipulated at the hearing that she has failed to pay post-petition ad valorem 2015 property taxes of $5173 on the Loretto Property during the pendency of this case. This failure is one more indication that dismissal is warranted.

Case 3:15-bk-03929   Doc 292   Filed 05/05/16   Entered 05/05/16 17:22:14   Desc Main
Document      Page 17 of 18

### D. UNUSUAL CIRCUMSTANCES

Once a party demonstrates that cause exists to convert or dismiss the case under 11 U.S.C. § 1112(b), a court is required to dismiss or convert the case unless the court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). By its own terms, 11 U.S.C. § 1112(b)(2) provides that the "unusual circumstances" exception does not apply if the cause for dismissal or conversion is a "substantial or continuing loss to or diminution of the estate," as set forth in 11 U.S.C. § 1112(b)(4)(A). *See also In re Landmark Atl. Hess Farm, LLC,* 448 B.R. 707, 717 (Bankr. D. Md. 2011). While the Court does not need to consider unusual circumstances in this case, the Court finds that no such circumstances have been presented.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the motion to dismiss should be granted.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

18 - U.S. Bankruptcy Court, M.D. Tenn.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:15-bk-03929   Doc 292   Filed 05/05/16   Entered 05/05/16 17:22:14   Desc Main
Document      Page 18 of 18